Opinion Issued December 11, 2003 







 






     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00530-CR




ELBERT DWAYNE BLAKE, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Cause No. 01CR1721




O P I N I O N

          Elbert Dwayne Blake, appellant, was charged with felony possession of
methamphetamine with intent to deliver. After the trial court denied appellant’s
motion to suppress evidence and his request for disclosure of the State’s informant,
appellant pleaded guilty to the lesser felony of possession of methamphetamine. 
Pursuant to a plea bargain agreement, and after appellant pleaded true to a
punishment enhancement offense of possession of a controlled substance, the trial
court assessed punishment at five years’ confinement. In two points of error,
appellant contends that the trial court erred in (1) denying his motion to suppress
evidence seized pursuant to a search warrant and (2) refusing to order disclosure of
an informant.


 We affirm. 
Background
          The following facts are derived from Officer Santiago Turrubiate’s search
warrant affidavit and the trial court’s hearing on appellant’s motion to suppress and
motion to disclose the informant’s identity. 
          Although appellant lived permanently with his parents in Lufkin, he would
come to Dickinson three to four times a month. When in Dickinson, he would stay
at the 1024 Pin Oak home of Keith Calhoun. The Calhoun home was separated into
two distinct areas—one apartment upstairs and one downstairs. Although the
apartments were internally connected, furniture blocked access to the internal
stairwell. Appellant stayed at the downstairs apartment and kept some personal
belongings there, such as a computer and television. 
          Officer Turrubiate is a member of the Dickinson Police Department and of the
Narcotics Task Force. Based on his August 8, 2001 affidavit, a search warrant was
issued for the 1024 Pin Oak residence the same day. After describing the suspected
place and premises of 1024 Pin Oak, Turrubiate noted in his affidavit that “there is
at said suspected place and premises, property and items which possession of is
prohibited by law, namely methamphetamine.” The affidavit named Ricky Blake,
“Albert” (last name unknown) and “any other persons who’s [sic] identities are
unknown to the Affiant at this time, but may be present at said residence.” 
          In over two single-spaced typed pages, Turrubiate then stated the probable
cause facts. In May 2001, Turrubitate received narcotics information from Agent
Delaney of the Galveston County Narcotics Task Force that persons unknown living
at 1024 Pin Oak were manufacturing and delivering methamphetamine. Agent
Delaney received this information from former Deputy Constable Doug Knight, who
observed a white male in the process of manufacturing what he knew to be
methamphetamine. On July 24, 2001, Corporal Fairchild, a Texas City Police Officer
formerly assigned to the Narcotics Task Force, received information from a
confidential informant that persons living in the Pin Oak home were in possession of
methamphetamine, cocaine, and crack cocaine. Fairchild stated that this confidential
informant was reliable and credible because of the informant’s past history; Fairchild
had executed several search warrants using this informant. On July 25, 2001,
Turrubiate met with this confidential informant, who stated that he/she had been
inside both Pin Oak apartments, that he/she met with Calhoun, and that he/she knew
that Calhoun, Ricky Blake, and Albert were manufacturing and delivering
methamphetamine. The confidential informant told Turrubiate that he/she saw
glassware, beakers, tubes, and microwaves in the apartment believed to be used in the
manufacture of methamphetamine, and smelled a strong odor of chemicals believed
to be associated with the manufacturing of methamphetamine. The informant also
informed Turrubiate that he/she knew that the person in the downstairs apartment was
assisting the person in the upstairs apartment in the sale of narcotics, including
methamphetamine. On August 8, 2001, the informant told Turrubitate that he/she
saw a small amount of methamphetamine inside the downstairs apartment. The
informant had been in the home in the past 24 to 48 hours and noticed that it was
being monitored by video surveillance. 
          With this information, Officer Turrubiate believed that Ricky Blake or other
persons unknown possessed methamphetamine. Based on this information, on
August 8, 2001, Turrubitate obtained a search and arrest warrant for Ricky Blake and
other persons unknown to him who might be present at the Pin Oak location. 
          On August 8, 2001, agents with the Galveston County Narcotics Task Force
executed two search warrants on 1024 Pin Oak—one for the upstairs apartment and
one for the downstairs apartment. There were two separate teams executing the
warrants. Turrubiate entered the upstairs apartment and Fairchild secured entry of the
downstairs apartment. The confidential informant was not present at the residence
when the search warrant was executed. Appellant was found in the downstairs
apartment sitting at his computer. No other persons were located in the downstairs
apartment. During the search, Officers located a working methamphetamine
laboratory, two plastic bags with a white powder believed to be methamphetamine,
and glassware and other paraphernalia believed to be used in the manufacture of
methamphetamine. 
Discussion
Motion to Suppress 
          In his first point of error, appellant argues that the trial court erred in denying
his motion to suppress evidence seized pursuant to a search warrant. In particular,
appellant contends that the search warrant affidavit was inadequate as it “did not
establish probable cause to believe contraband or evidence of a crime could be found
at that location at the time the warrant was to be executed.” 
          In reviewing the trial court’s ruling on the motion to suppress, we apply a
bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000). We give almost total deference to the trial court’s determination of
historical facts that depend on credibility, while we conduct a de novo review of the
trial court’s application of the law to those facts. Id. We review de novo the trial
court’s application of the law of search and seizure and probable cause. State v. Ross,
32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Wilson v. State, 98 S.W.3d 265, 271
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). Appellate review of an affidavit
in support of a search warrant, however, is not de novo. Rather, great deference is
given to the magistrate’s determination of probable cause. Illinois v. Gates, 462 U.S.
213, 236-37, 103 S. Ct. 2317, 2331 (1983); Uresti v. State, 98 S.W.3d 321, 335 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). The test for determination of probable
cause is whether the magistrate had a substantial basis for concluding that a search
would uncover evidence of wrongdoing. Gates, 462 U.S. at 236, 103 S. Ct. at 2331. 
          Probable cause to support the issuance of a search warrant exists where the
facts submitted to the magistrate are sufficient to justify a conclusion that the object
of the search is probably on the premises to be searched at the time the warrant is
issued. Cassias v. State, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986). To justify the
issuance of a search warrant, the affidavit submitted in support must set forth facts
sufficient to establish probable cause that (1) a specific offense has been committed,
(2) that specifically described property or items to be searched for and seized
constitute evidence of the offense, and (3) the property or items constituting such
evidence are located at the particular place to be searched. Tex. Code Crim. Proc.
Ann. art. 18.01(c) (Vernon Supp. 2004). Whether the facts mentioned in the affidavit
are adequate to establish probable cause depends on the totality of the circumstances. 
Ramos v. State,  934 S.W.2d 358, 362-63 (Tex. Crim. App. 1996). Statements made
during a motion to suppress hearing do not factor into the probable cause
determination; rather, we examine only the four corners of the affidavit to determine
whether probable cause exists. Massey v. State, 933 S.W.2d 141, 148 (Tex. Crim.
App. 1996); Wilson, 98 S.W.3d at 270-71. Reasonable inferences may be drawn from
the affidavit, and the affidavit must be interpreted in a common sense and realistic
manner. Wilson, 98 S.W.3d at 271.
          The task of a magistrate in issuing a search warrant is to make a practical,
common-sense decision whether, given all the circumstances set forth in the warrant’s
supporting affidavit, including the veracity and basis of knowledge of persons
supplying hearsay information, there is a fair probability that contraband or evidence
of a crime will be found in a particular place. Gates, 462 U.S. at 238, 103 S. Ct. at
2332. The duty of a reviewing court is simply to determine whether, considering the
totality of the circumstances, the magistrate had a substantial basis for concluding that
probable cause existed to support the issuance of the warrant when viewing the
affidavit. Id. 
          Appellant contends that several parts of the affidavit, when considered as a
whole, do not “state an adequate basis for the issuance of the search warrant for the 
downstairs apartment.” In particular, appellant complains of (1) an omission of facts
in the affidavit, (2) staleness of the information contained in the affidavit; (3) the
lack of credibility and reliability of the informer; and (4) the lack of a corroborating
investigation. 
Omission of Facts 
          First, appellant argues that the affidavit omitted the fact that Doug Knight, a
former deputy constable, was a narcotics user who obtained drugs from Keith
Calhoun.


 Appellant argues that these are material omissions of fact that should be
treated as misrepresentations of material information under Franks v. Delaware, 438
U.S. 154, 98 S. Ct. 2674 (1978). In Franks, the Supreme Court recognized that if an
affirmative misrepresentation is knowingly included in a probable cause affidavit in
support of a search warrant, and the misrepresentation is material and necessary to
establishing the probable cause, the warrant is rendered invalid under the Fourth
Amendment. Franks, 438 U.S. at 155-56, 98 S. Ct. at 2676. The Texas Court of
Criminal Appeals has not yet recognized that a Franks analysis pertains to omissions
as well as false statements. See Massey, 933 S.W.2d at 146; Brooks v. State, 642
S.W.2d 791, 796-97 (Tex. Crim. App. [Panel Op.] 1982). However, the Fifth Circuit,
along with other Texas Courts of Appeals, has concluded that allegations of material
omissions are to be treated essentially the same as claims of material misstatements. 
 See United States v. Martin, 615 F.2d 318, 328 (5th Cir. 1980); Melton v. State, 750
S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1998, no pet.); Heitman v. State,
789 S.W.2d 607, 610-11 (Tex. App.—Dallas 1990, pet. ref’d). We agree. 
          Here, the record contains no evidence that Turrubiate, the affiant, intentionally
or knowingly, with reckless disregard for the truth, made any misstatements or
omissions in the affidavit that would affect the finding of probable cause in support
of the issuance of the search warrant. Furthermore, appellant has not shown that the
affidavit, if supplemented with the omitted information, would be insufficient to
support a finding of probable cause. Hackleman v. State, 919 S.W.2d 440, 449 (Tex.
App.—Austin 1996, pet. ref’d). We conclude that the affidavit was not rendered
invalid by the omission of material facts. 
Staleness
          Appellant also contends that some of the information provided in the affidavit
was stale or that the reported criminal activity did not take place within a time period
close enough to the time the search warrant was executed to ensure that evidence of
the crime would likely be found. Appellant first argues that the July 25, 2001
information provided in the affidavit was stale when the August 8 affidavit was given. 
The affidavit contains the following relevant information about July 25, 2001:
On July 25, 2001, your Affiant met with Corporal Fairchild
who advised that he had received information from a
confidential informant that a house located in the City of
Dickinson, lived a person in possession of
methamphetamine, cocaine, and crack cocaine.
 
. . . 
 
Cpl. Fairchild stated to your Affiant that the confidential
informant was reliable due to the informant’s past history. 
Cpl. Fairchild stated that he has executed several search
warrants utilizing this informant. 
 
On July 25, 2001, Affiant met with Cpl. Fairchild and the
confidential informant. The informant advised your
Affiant that he/she had been inside two apartments located
at a house in the city of Dickinson. . . . 
 
Appellant claims that the affidavit is not clear whether the observations were made
on July 25, 2001 or whether the observations were made at an earlier time and
reported on July 25, 2001. Appellant also challenges the August 3, 2001 and August
8, 2001 information contained in the affidavit. The affidavit provided that:
On August 3, 2001, your Affiant was advised by a
confidential informant that he/she witnessed processed
methamphetamine being stored at the second floor
apartment, which is in the control of Keith Calhoun. 
 
On August 8, 2001, the same confidential informant
advised your Affiant that he/she had been inside the above-mentioned apartments located at 1024 Pin Oak. The
informant advised your Affiant that he/she witnessed a
small amount of methamphetamine inside the second floor
apartment and the first floor apartment. The informant
further advised your Affiant the he/she believes that all
persons mentioned in this affidavit is [sic] preparing to
process more methamphetamine. 
Appellant claims that the affidavit only indicated that an observation of
methamphetamine was reported to the affiant on August 3, 2001 and August 8, 2001
and that it did not state that the observations were actually made on those dates. 
          To justify a magistrate’s finding that an affidavit is sufficient to establish
probable cause to issue a search warrant, the facts set out in the affidavit must not
have become stale when the magistrate issues the search warrant. Guerra v. State, 
860 S.W.2d 609, 611 (Tex. App.—Corpus Christi 1993, pet. ref’d); see also Rowell
v. State, 14 S.W.3d 806, 809 (Tex. App.—Houston [1st Dist.] 2000), aff’d, 66 S.W.3d
279 (Tex. Crim. App. 2001); Hafford v. State, 989 S.W.2d 439, 440 (Tex.
App.—Houston [1st Dist.] 1999, pet. ref’d). Probable cause ceases to exist when, at
the time the search warrant is issued, it would be unreasonable to presume the items
remain at the suspected place. Guerra, 860 S.W.2d at 611. The proper method to
determine whether the facts supporting a search warrant have become stale is to
examine, in light of the type of criminal activity involved, the time elapsing between
the occurrence of the events set out in the affidavit and the time the search warrant
was issued. Id. When the affidavit recites facts indicating activity of a protracted and
continuous nature, i.e., a course of conduct, the passage of time becomes less
significant. Lockett v. State, 879 S.W.2d 184, 189 (Tex. App.—Houston [14th Dist.]
1994, pet. ref’d). 
          The search warrant was issued August 8, 2001, the same day that Turrubiate
signed the affidavit. That same day, the confidential informant advised Turrubiate
that he/she had been inside the downstairs apartment and witnessed a small amount
of methamphetamine. The informant advised the affiant that he/she believed that all
persons mentioned in the affidavit were preparing to process more methamphetamine. 
The next paragraph of the affidavit continues with the informant’s advice to the
affiant: “the informant advised your affiant that he/she had been in the suspected
place in the past twenty-four to forty-eight hours. . . .” Reading this paragraph in a
common-sense manner, it is reasonable to conclude that the informant had been in the
suspected place 24-48 hours prior to August 8, 2001. Thus, these observations about
seeing methamphetamine occurred no more than one to two days prior to the issuing
and execution of the search warrant. With this short lapse of time, it was reasonable
for the magistrate to suspect that the contraband was still present in the apartment
when the search warrant was issued.
          Furthermore, on August 2, 2001, Corporal Fairchild advised Agent Delaney,
who advised the affiant, that the informant witnessed methamphetamine being
manufactured “on this date.” This was only six days before the search warrant was
issued. Considering that a methamphetamine manufacturing operation is likely to be
more stationary than other forms of drug related criminal activity, it was reasonable
to believe that the contraband was still where the informant said he/she had viewed
it six days earlier. We conclude that there are sufficient facts set out in the affidavit
that were not stale when the magistrate issued the search warrant to justify the
magistrate’s conclusion that methamphetamine would be found at appellant’s
residence. 
Reliability, Credibility, and Corroboration 
          Appellant also challenges the reliability and credibility of the informant, and
the lack of a corroborating police investigation. He argues that (1) Fairchild’s
assertions in the affidavit about the informant are conclusory; (2) there was a lack of
“substantial basis” for Turrubiate’s own reliance on the informant; and (3) it was not
stated in the affidavit “that the informant mentioned at the end was the same
informant who was mentioned at the beginning.” Appellant further claims that “the
affidavit also omits evidence of a sufficient corroborating investigation by Turrubiate,
Fairchild, or anyone else.” While appellant admits that Turrubiate conducted
surveillance on the suspected place, as stated in the affidavit, appellant notes that
Turrubiate did not indicate seeing a significant amount of foot traffic suggesting
narcotics activity. Rather, the only information included in the affidavit about the
surveillance was that Turrubiate spoke with a neighbor of the suspected place who
stated that he/she had witnessed numerous persons entering the suspected place and
leaving shortly thereafter. 
          An affidavit need not reflect the direct personal observations of the affiant so
long as the magistrate is informed of some of the underlying circumstances
supporting the affiant’s belief that any informant involved, whose identity need not
be disclosed, was credible or his information reliable. United States v. Ventresca, 
380 U.S. 102, 108, 85 S. Ct. 741, 745-46 (1965). Although an informant’s veracity,
reliability, and basis of knowledge are highly relevant in reviewing the sufficiency
of an affidavit, these elements are not each independent requirements, but closely
intertwined issues that illuminate the overall question of whether there is probable
cause. Gates, 462 U.S. at 230, 103 S. Ct. at 2317.
          When an unnamed informant is relied upon in an affidavit for a search warrant,
his credibility may be established by allegations that the informant has proven reliable
on previous occasions. Avery v. State, 545 S.W.2d 803, 804 (Tex. Crim. App. 1977). 
This reliability may be established by the general assertions of the affiant, as stated
in the affidavit, concerning the informant’s prior reliability. Capistran v. State, 759
S.W.2d 121, 128 (Tex. Crim. App. 1982). The magistrate may also rely on the
experience and pertinent expertise of an affiant in evaluating the informant’s report. 
Hackleman, 919 S.W.2d at 447. 
          An affidavit in support of a warrant to search for narcotics need not provide
more specific details regarding the informant’s reliability than to state the informant
had given information in the past regarding narcotics trafficking which had proved
correct. Torres v. State, 552 S.W.2d 821, 824 (Tex. Crim. App. 1977). Further,
because such a statement, when interpreted in a realistic and common-sense manner,
indicates the informant’s familiarity with controlled substances, no further details are
required to spell out the informant’s qualifications in recognizing drugs. Id. 
          In the present case, the affidavit reveals the following about the credibility and
reliability of the informant: (1) the informant had provided information to Corporal
Fairchild before, which Fairchild used in executing several search warrants; and (2)
the informant provided information to another narcotics agent in the past, which
“resulted in the arrest of numerous defendants and the seizure of crack cocaine,
marijuana, and currency.” This information sufficiently establishes the informant’s
credibility and reliability. 
          Appellant claims that Turrubiate merely accepted Fairchild’s assertion that the
informant was reliable and credible. Appellant argues that this is insufficient 
because there was a lack of substantial basis for Turrubiate’s own reliance on the
informant. Appellant claims that Turrubiate did not indicate in his affidavit that he
had any connection to the cases in which the informant had provided reliable
information to Fairchild. However, the affidavit indicates that the informant had prior
dealings with Corporal Fairchild and the Galveston County Narcotics Task Force, the
Dickinson Police division to which Turrubiate was assigned. The affidavit was
sufficient to provide the magistrate with facts on which to base a determination of the
informant’s credibility. We conclude that the information from the informant
provided a reasonable basis for the magistrate to conclude that probable cause existed
for the issuance of the search warrant. 
          Finally, although appellant asserts that the affidavit was unclear regarding how
many confidential informants provided information, the issuing magistrate, by
interpreting the affidavit in a common-sense and realistic manner, could have
reasonably inferred from the facts in the affidavit that only one informant was
involved. The affidavit even notes that “on August 8, 2001, the same confidential
informant . . .” provided Turrubiate with information. Having determined that there
was only one informant, and that the informant was credible and reliable, the
magistrate reasonably concluded that the affidavit was sufficient to establish probable
cause to issue a search warrant. See Avery, 545 S.W.2d at 804; Hackleman, 919
S.W.2d at 447. 
          Information provided by an informant must contain some indicia of reliability
or be reasonably corroborated by police before it can be used to justify a search.


 
Gates, 462 U.S. at 242, 103 S. Ct. at 2334. In the present case, the informant
provided specific reasons why he/she believed that appellant and the other residents
of the Pin Oak home were manufacturing methamphetamine, including the admission
by Calhoun, the viewing of methamphetamine manufacturing paraphernalia, the
witnessing of methamphetamine manufacturing, and the fact that the informant had
been inside the residence in the past two days. As discussed above, the affidavit also
revealed that the confidential informant was credible and reliable. The informant had
given information to other narcotics agents in the past which had resulted in the arrest
of numerous defendants and the seizure of narcotics. These previous dealings with
the informer gave Fairchild, Turrubiate, and the magistrate, a basis for crediting the
informant’s information. Thus, corroboration was not necessary.


 See id.  
          Reviewing the affidavit in the light of the totality of the circumstances, we
conclude that information contained in the affidavit provided the magistrate with a
substantial basis for concluding that there was a fair probability that a search of the
premises would reveal the presence of contraband. 
          We overrule appellant’s first point of error. 
Disclosure of an Informant

          In his second point of error, appellant contends the trial court erred in denying
his motion to disclose the identity of the confidential informant. Appellant sought the
disclosure of the informer’s identity, claiming that “the affidavit in this cause relied
heavily on the informant” and that without disclosure “the appellant was left with no
way to either challenge the informant’s credibility through extrinsic evidence or to
call the informant as a witness in order to clarify important information . . . .”
Appellant contends he had the right to learn the identity of the confidential informant
pursuant to Rule 508(c)(3) of the Texas Rules of Evidence.
            We review a trial court’s denial of a motion to disclose a confidential informant
under an abuse of discretion standard. Taylor v. State, 604 S.W.2d 175, 179 (Tex.
Crim. App. 1980). Under this standard, we affirm the judgment unless the trial
judge’s decision was so clearly wrong as to lie outside that zone within which
reasonable persons might disagree. Montgomery v. State, 810 S.W.2d 372, 380 (Tex.
Crim. App. 1990). 
            As a general rule, when a defendant files a motion to disclose the identity of
a confidential informant, the State has a privilege to withhold the identity of any
person who has provided information relating to, or assisting in, an investigation of
a possible violation of the law. Tex. R. Evid. 508(a). There are exceptions to this
privilege. First, a court should order the State to disclose the identity of a confidential
informant if the informer may reasonably be able to give testimony necessary to a fair
determination of the issues of guilt and innocence. Tex. R. Evid. 508(c)(2). Also,
disclosure should be ordered “if information from an informer is relied upon to
establish the legality of the means by which evidence was obtained and the judge is
not satisfied that the information was received from an informer reasonably believed
to be reliable or credible.” Tex. R. Evid. 508(c)(3). A defendant who makes a
request under Rule 508 has the threshold burden of demonstrating that the
informant’s identity must be disclosed. Rugendorf v. United States, 376 U.S. 528,
534-35, 84 S. Ct. 825, 829-30 (1964); Bodin v. State, 807 S.W.2d 313, 318 (Tex.
Crim. App. 1991).
          Rule 508(c)(3) is written in discretionary terms. Only if the trial court judge
is not satisfied that the information was received from an informer reasonably
believed to be reliable or credible may he require the identity of the informer to be
disclosed. Tex. R. Evid. 508(c)(3). The test is whether the judge is satisfied that the
informant was reasonably believed to be reliable or credible. Thompson v. State, 741
S.W.2d 229, 231 (Tex. App.—Fort Worth 1987, pet. ref’d). 
          As the sole judge of the credibility of the witnesses, the trial judge was entitled
to believe Officer Turrubiate’s testimony and was not obliged to require disclosure
of the informant’s identity. Id. at 231. There is nothing in the record which indicates
that Turrubiate did not believe the informant to be reliable or credible at the time that
he made his affidavit. We, therefore, cannot say that the trial court abused its
discretion in refusing to order disclosure of the informant’s identity. 
          We overrule appellant’s second point of error.  
 
          
Conclusion

          We affirm the judgment of the trial court. 
 

 


                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.
Publish. Tex. R. App. P. 47.2(b).